**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2350-24

ESTER BELL, AS
ADMINISTRATRIX OF THE
ESTATE OF MARK A. BELL,
DECEASED,

     Plaintiff,

v.

TWO BROTHERS AND DAD
TRUCKING COMPANY, LLP,
GREGORY MORGAN and
REFES BELL,

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

345 LINCOLN REALTY LLC
and SAM LEVIN,

     Third-Party
     Defendants-Appellants.

_____

Submitted September 11, 2025 – Decided September 18, 2025

Before Judges Mawla and Marczyk.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Gloucester County, Docket No. C-000020-21.

Terance J. Bennett, attorney for appellants.

Puff, Sierzega & MacFeeters, LLC, attorneys for respondents (Ronald P. Sierzega, on the brief).

PER CURIAM

On leave granted, third-party defendants 345 Lincoln Realty LLC and Sam Levin (Lincoln) appeal from the Chancery Division's February 28, 2025 order directing Lincoln to return certain equipment to defendants/third-party plaintiffs Two Brothers and Dad Trucking Company, LLP, Gregory Morgan, and Refes Bell (Two Brothers). Two Brothers was directed, in turn, to sell the equipment to satisfy a debt pursuant to a settlement agreement between Two Brothers and plaintiff Ester Bell, as administratrix of the estate of Mark Bell, deceased. We reverse and remand.

I.

Lincoln owned property in Buena Vista Township and provided storage services under bailment to independent commercial trucking companies who used Lincoln's property to park and store trucks, trailers, and other equipment. Two Brothers stored two tractors, five trailers, and other property on Lincoln's lot from July 2021 through February 2023, for a monthly fee of $1,275.

2

A-2350-24

According to Lincoln, Two Brothers consistently paid the storage fees until March 2023. Thereafter, although Two Brothers' property remained on Lincoln's premises, Two Brothers made no further payments. Lincoln asserts the unpaid storage charges totaled $30,600 as of February 2025. Lincoln asserted a statutory lien as a bailee and received clearance from the New Jersey Motor Vehicle Commission to auction the vehicles. The auction date was set for August 30, 2024.

In January 2021, Mark Bell, a principal of Two Brothers, died. Plaintiff subsequently filed an action for a buyout of Mark Bell's partnership interest in Two Brothers. That case settled with an agreement that a truck—located on Lincoln's property—needed to be sold by Two Brothers and the proceeds distributed among the parties. Plaintiff subsequently moved to enforce the settlement. The Chancery Division was apparently unaware of the existence of Lincoln's purported lien. It issued an order enforcing the settlement and directed the sale of certain property located on Lincoln's premises. Two Brothers subsequently sought to stay Lincoln's auction of the property asserting there was no storage agreement between Two Brothers and Lincoln, and that Lincoln was illegally in possession of Two Brothers' property.

A-2350-24

On August 28, 2024, the court stayed Lincoln's auction of Two Brothers' property. Thereafter, Two Brothers moved to proceed with the sale of the disputed property, and on February 28, 2025, the court granted, in part, the application without adjudicating the validity of Lincoln's lien. The court directed Lincoln to turn over certain property to Two Brothers and for Two Brothers to sell the property pursuant to the previous order enforcing the settlement between plaintiff and Two Brothers. The court noted, "[h]owever, any other equipment shall not be sold, disposed of or otherwise encumbered pending an adjudication of the counter claim" of Lincoln. Lincoln maintains the court should have allowed it to auction the chattel with any excess proceeds returned to Two Brothers to satisfy Two Brothers' settlement obligation with plaintiff. On April 7, 2025, we granted Lincoln's motion for leave to appeal and stayed the trial court's order pending disposition of this appeal.

II.

On appeal, Lincoln argues the court erred in allowing Two Brothers to take possession and sell the subject property in defiance of its statutory lien. It contends it is entitled to a lien under N.J.S.A. 12A:7-209 and that it should not have to "chase a paper judgment" to collect its damages.

4

N.J.S.A. 12A:7-209(a), in pertinent part, provides: "A warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage . . . and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law." Lincoln also relies on N.J.S.A. 2A:44-21, which provides:

> A garage keeper who shall tow, store, maintain, keep, or repair a motor vehicle . . . at the request or with the consent of the owner or the owner's representative, . . . shall have a lien upon the motor vehicle or any part thereof for the sum due for such . . . storing, . . . and may, without process of law, detain the same at any time it is lawfully in his possession until the sum is paid.

Lincoln further asserts the trial court erred by relying on its equitable powers and ignored "the black letter statutes that establish [Lincoln]'s lien." It notes the court never properly adjudicated the lien and maintains that the amounts it is owed under the lien may exceed the value of the chattel, in which case it would be entitled to keep the entire amount of any proceeds obtained at auction. It further insists Two Brothers' complaint was not verified and that it falsely asserted the parties did not have an agreement for payment, which is "belied by the fact that . . . [Two Brothers] paid [Lincoln] monthly for the storage . . . over a course of . . . more than [eighteen] months." With no certification

5

provided by Two Brothers, Lincoln contends the court improperly relied on the representations of Two Brothers' counsel, while ignoring the uncontroverted certification of Lincoln's representative, Sam Levin.  It notes that no testimony was taken, and the court made no credibility findings.

Lincoln claims that once the trial court recognized that its original order enforcing the settlement involved property subject to a lien, it should have rescinded the order.  Rather, the court ignored the lien and proceeded to order the sale of the property.  It asserts plaintiff and Two Brothers have spent their time litigating over property in which they may have no remaining equitable interest because of the lien.  Lincoln further argues Two Brothers abandoned the property for the purposes of N.J.S.A. 39:4-56.6, and that at the very least, failed to pay the cost for the storage.  Lastly, Lincoln argues that if it has a lien, the lien applies to all of Two Brothers' property, and it was improper for the trial court to release any of the property from the lien.

In rendering its decision, the court noted,

> I will tell you that I don't think that it would be equitable for [Lincoln] to be able to charge fees for storage after the point where [Two Brothers] said give it back to us now.  And I understand [Lincoln's] position . . . , but again, I think it's a slippery slope that we go on where . . . you can hold it interminably and continue to accrue all these fees.  It just seems like . . . that would not be an equitable thing to do. . . .  I've ordered some

6

of the equipment to be sold. That needs to be released to [Two Brothers].

Lincoln's counsel advised the court its prior order directing Two Brothers to sell the property was issued "under the mistaken assumption that the property was free and clear to be sold." The court responded, "I'm talking about having an equitable remedy . . . so that your client is going to be protected in some fashion." It continued, "[Two Brothers] will be under an order . . . that [Lincoln] will have a lien as to the proceeds on the other equipment that was not ordered to be sold." The court further stated, "And then it's off the property. It's no longer subject to a storage fee and [Two Brothers] can't sell it without . . . [Lincoln] get[ting] the proceeds." It then went on to say: "And I'm not saying that [Lincoln does not] have a good argument . . . for some type of a bailment, but . . . I think that we can proceed . . . [and] if you go back to the Law Division on a bailment issue . . . then you go from there and see what happens."

The court added,

> I'm trying to do something so that we can move things along here and try to half protect everybody. And that's about . . . the only thing that I can come up with. I really can't come up with anything else that is going to protect [Lincoln and Two Brothers] . . . in some fashion until you can adjudicate the . . . dollar figure.

7

The court also commented that it did not know how much the equipment was worth. Despite the court not knowing the value of the property and recognizing the parties disputed the value, it proceeded to order the release of the property to Two Brothers and allowed a truck to be sold.

Nevertheless, the court commented to Lincoln's counsel, "You're going to have a lien . . . and with . . . that they can't . . . encumber or dispose, sell or otherwise transfer the property, which was not subject to the prior order." Moreover, the court noted the counterclaim would not be dismissed, and Lincoln could proceed to obtain a judgment.

We review questions of law de novo. See State v. Gandhi, 201 N.J. 161, 176 (2010). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We conclude the court erred in not adjudicating the validity of the lien prior to allowing the sale of the subject property. The court appeared to recognize Lincoln had a valid lien, but nevertheless required Lincoln to turn the property over to Two Brothers to be sold so that Two Brothers could pay plaintiff to satisfy the settlement between plaintiff and Two Brothers. However, this ignored the rights of Lincoln to have a hearing to adjudicate whether it had

a valid lien, which is disputed by Two Brothers. To the extent Lincoln has a valid lien, its interests were not protected when the court directed it to turn over the property to Two Brothers to sell.

Although equity is flexible, it cannot contradict a clear statutory mandate. The court here overlooked the maxim that "equity follows the law." See In re Est. of Shinn, 394 N.J. Super. 55, 67 (App. Div. 2007) . While the maxim will "not bar the crafting of a remedy not recognized by legislation or found in the common law, . . . it [will] prevent the issuance of a remedy that is inconsistent with recognized statutory or common law principles." Ibid. We appreciate the court's effort to fashion a remedy, but it should have first addressed the viability of Lincoln's statutory lien claim prior to ordering the sale of the subject property, particularly where there was a dispute as to the value of the subject property and whether the remaining property would satisfy the alleged lien. On remand, Lincoln's lien should be adjudicated before any property is sold.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2350-24